REINHARDT, Circuit Judge,
dissenting.
I would hold that the allegation of Schad’s serious mental illness at- the time he committed his offense constitutes a new ineffective assistance of counsel claim. In reaching a contrary result, the majority adopts an erroneous view of how Schad’s new allegation relates to his old ineffective assistance claim — and thus misses the fundamental difference between Schad’s two claims. This error leads the majority to dismiss Schad’s motion by deeming it a second or successive petition. Because Schad in fact presents a new claim that satisfies the standard for relief from judgment under Federal Rule of Civil Procedure 60(b), I dissent.
My disagreement with the majority turns on an assessment of the proper interpretation of the scope of Schad’s old and new claims. When Schad presented new evidence on federal habeas regarding the failure of sentencing counsel to investigate the state of his serious mental illness as of the time of the crime, he advanced a new claim distinct from his earlier one that counsel should have investigated Schad’s history of childhood abuse. See Valerio v. Crawford, 306 F.3d 742, 768 (9th Cir.2002) (en banc). Although the majority blends the two claims into a single argument, each of these claims relies basically on different evidence, invokes a different legal *968 basis for mitigation, and results from a different kind of deficiency in counsel’s investigation and presentation of mitigation evidence. Those considerations dictate the conclusion that Schad’s claim based on recently-obtained evidence is a new and different one.
To be sure, the line between a new claim and an old claim bolstered by more evidence is not always clear.[1] Wherever that line is drawn, however, Schad’s claim is most certainly a new one. An examination of the new evidence that he has presented on federal habeas, and his legal theories supporting a finding of ineffective assistance, demonstrate that Schad has advanced two separate claims, only one of which was presented to and adjudicated by the state post-conviction court.
Schad’s initial claim was that “sentencing counsel was ineffective for failing to discover and present mitigating evidence regarding Schad’s family background.” Schad v. Ryan, 671 F.3d 708, 721 (9th Cir.2011). This “old” claim did not purport to raise the question of Schad’s mental condition as an adult. Rather, the old claim simply alleged an incompetent investigation of Schad’s background — an investigation that resulted in an inability to present a complete picture of a person that could have helped humanize Schad before the sentencer. In short, the old claim related only to deficiencies with respect to counsel’s failure to investigate Schad’s childhood and family environment, including his failure to examine records from Schad’s youth and to follow up with mitigation experts. Ultimately, the old claim was based on the legal theory that counsel rendered ineffective assistance by failing to investigate or present substantial evidence that would have painted a human picture of Schad — a picture that might have prompted a reasonable judge to feel sympathy and spare the defendant’s life. See Ainsworth v. Woodford, 268 F.3d 868, 876-77 (9th Cir.2001) (emphasizing the “essential importance of developing the background and character of a defendant in order to make an individualized assessment of the appropriateness of the death penalty.”).
On federal habeas, in support of the “new” claim, Schad introduced substantial new factual evidence pertaining to his mental condition as an adult. He argued that counsel provided ineffective assistance by failing to investigate and present evidence that Schad suffered from serious mental illness at the time of the crime. One of his doctors, Dr. Sanislow, offered expert opinions regarding Schad’s “cognitive and psychological development and his *969 behavioral functioning as an adult.” Sanislow’s extremely thorough review of Schad’s history notes that his early (precrime) documented behavior was consistent with “several major mental disorders, apparently none of which was ever considered previously.” These disorders include “Bipolar Disorder; Major Depression or other depressive disorders; Obsessive-Compulsive Disorder; Schizoaffective Disorder; Several of the anxiety disorders; Dissociative disorders; Adjustment disorders.” In his report, Sanislow concludes:
[Schad’s] behavior is consistent with mental illness in the affective spectrum, specifically some type of bipolar affective illness. Throughout his life, he had often exhibited symptoms of paranoia, anxiety, and mania, and his presentation is complicated by his history of trauma. Signs of a thought disturbance are at times present in his speech patterns; he perseverates, displays impoverished speech, and has a limited range of affect. The passive-dependent traits that [an earlier expert] described in her psychological evaluation are likely accompaniments to chronic mental illness but do not capture the complete diagnostic picture. In addition to manic symptoms, he displays classic signs of chronic depression including a foreshortened sense of future.
This new evidence stands in stark contrast to the pre-sentencing report, relied on heavily by the sentencing court, which stated that “[Schad] has not suffered from any mental health problems.”
The new claim differs from the old claim in every respect that matters. It relies heavily on new and different evidence relating to Schad’s mental illness at the time he committed the crime, notably including Sanislow’s report. It points to different deficiencies on the part of counsel than those identified in the old claim, principally the failure to examine Schad’s mental state at the time of the murder and to obtain a full social history in support of such a claim. Finally, it turns on a different legal theory. The new claim, unlike the old one, is not concerned with inadequacies in painting Schad as a sympathetic individual by virtue of his difficult childhood. It is not based on counsel’s failure to develop evidence that Schad’s abusive upbringing constituted a mitigating circumstance that outweighed the case for death. Rather, it attempts to establish that counsel was ineffective for failing to investigate and present evidence of serious mental illness as an adult that might have been responsible, at least in part, for Schad’s commission of the violent act of intentionally killing Grove. Without this evidence, Schad’s crime appears to be nothing but the act of a ruthless and cold blooded killer. This was especially true in light of the other evidence at sentencing, which strongly suggested that Schad was of sound mind at the time that he committed the offense. Schad’s new claim thus relies on new and different factual allegations, a new and different account of the alleged deficiency in sentencing counsel’s performance, and a new and different legal theory of why sentencing counsel rendered ineffective assistance.
The majority nonetheless treats the two claims as one. Its insistence that Schad’s claim has always been based on the link between childhood abuse and his mental condition at the time of the offense, however, is simply not correct. In our earlier opinion, relied upon by the majority, we revealed our awareness that Schad’s claim was focused almost exclusively on his childhood. We quoted at length from the pre-sentence report’s discussion of “Schad’s childhood,” noted that counsel “did not present additional evidence regarding Schad’s troubled childhood,” observed that Schad’s preliminary state habeas petition “argued the sentencing court failed to give proper weight to mitigating evidence of his troubled family back *970 ground,” and pointed out that his supplemental state petition included “a general claim that Schad’s sentencing counsel was ineffective for failing to discover and present mitigating evidence regarding Schad’s family background.” Schad v. Ryan, 671 F.3d 708, 720-21 (9th Cir.2011). Turning to his federal petition, we added:
By the start of federal habeas proceedings in 1998, Schad’s counsel had obtained a great deal more information about his early and abusive childhood experiences. Schad asserted that he received ineffective assistance of counsel at the penalty phase of trial when his attorney, Shaw, failed to investigate and present mitigating evidence regarding Schad’s troubled childhood, and instead relied on the brief discussion of Schad’s childhood contained in the psychiatrist’s testimony and in the presentence report. During proceedings before the district court, Schad sought an evidentiary hearing in order to present a significant amount of evidence regarding his abusive childhood, which he contends his sentencing counsel should have presented at the sentencing hearing.
Id. at 721 (emphasis added). The unmistakable point of our opinion was that Schad based his old ineffective assistance claim on failure to present mitigation evidence consisting of his abusive childhood experiences. We said nothing whatsoever about ineffective assistance in failing to seek or obtain evidence of Schad’s mental illness as an adult.
The majority bases its argument almost entirely on a few references to the lack of investigation into Schad’s psychiatric status. In context, however, these statements refer to evaluations of how his traumatic experiences affected Schad as a youth and relate solely to the sympathy-based mitigation argument described above. See, e.g., id. at 720 (noting that counsel failed to obtain “first-hand descriptions of the abuse Schad suffered as a child” or “a psychiatric evaluation to assess the negative effects of that abuse”). At no point in our prior opinion did we say anything at all about a connection between Schad’s youth and his commission of the crime or about his multi-faceted mental illness at the time he did so. Ultimately, the majority errs in concluding that because Schad’s childhood trauma may be relevant to both ineffective assistance claims, those two claims must constitute a single claim. In fact, the new claim relies upon that childhood evidence only to provide an explanation of the background conditions that led to the development of Schad’s serious mental ailments. It does not seek mitigation because of Schad’s abusive childhood. To the contrary, it seeks mitigation because of the serious mental illness that marked Schad’s adult life.
It is clear that Schad’s new claim bears little resemblance to his old one and, therefore, cannot be said to be the same claim that was adjudicated on the merits by the state post-conviction court. The majority errs in reaching a contrary conclusion. That error leads it to mistake Schad’s procedurally proper Rule 60(b) motion for a second or successive habeas petition. Because Schad’s Rule 60(b) motion satisfies all other requirements for relief, I would remand to the district court to review his new ineffective assistance claim on the merits. That is the least we should do before carrying out a sentence of death under the questionable circumstances present here.[2]

. Dickens v. Ryan, a case currently pending before the en banc court, involves a similar fact pattern and presents a similar question to that which we are forced to address hastily in Schad's case. See 688 F.3d 1054 (9th Cir.2012), vacated, 704 F.3d 816 (9th Cir.2013). The panel that originally decided Dickens concluded that a petitioner’s factual allegations regarding mitigation evidence in federal court may amount to a new ineffective assistance claim, even where that petitioner has already alleged a more general ineffective assistance claim based on failure to investigate. See id. at 1067-70. It is to be expected that the en banc court will address that question and offer guidance on how to determine when new allegations generate a new claim. In almost any other circumstance, because a hasty resolution of this complicated issue runs a high risk of error, we would await the en banc ruling in Dickens. As Justice Douglas once said, "It is ... important that before we allow human lives to be snuffed out we be sure- — emphatically sure — that we act within the law.” Rosenberg v. United States, 346 U.S. 273, 321, 73 S.Ct. 1173, 97 L.Ed. 1607 (1953) (Douglas, J., dissenting). Although under the presently controlling case law, we are required to act quickly and without due time for reflection, Justice Douglas’s maxim counsels in favor of a liberal reading of the law governing what qualifies as a "new claim" so that we may avoid making a decision that we may regret in a matter of days or weeks.

. Judge Graber suggests in her concurring opinion that law of the case doctrine provides *971 an independent reason to affirm the district court. I disagree. In the case that she cites, the Supreme Court addressed only whether "extraordinary circumstances" justified a delay in issuing the mandate under Federal Rule of Appellate Procedure 41(d)(2)(D). See Ryan v. Schad, - U.S. -, 133 S.Ct. 2548, 2552, 186 L.Ed.2d 644 (2013). The Supreme Court said nothing about the substance of Schad’s argument. Although it did note that we had previously denied Schad’s request to vacate the judgment, we did so only on procedural grounds in an order consisting of a single sentence. See Schad v. Ryan, No. 07-99005, Docket Entry No. 90 ("The petitioner-appellant’s Motion to Vacate Judgment and Remand to the District Court is DENIED.”). Neither our one sentence order nor the Supreme Court’s recitation of the procedural history of our case while addressing an entirely different issues constitutes law of the case that controls this Rule 60(b) appeal.